**[J-76-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**


| | | |
|---|---|---|
| JOSE L. VELLON, | : | No. 39 MAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court dated |
| | : | September 10, 2021 at No. 117 CD |
| v. | : | 2020 Affirming the Order of the |
| | : | Court of Common Pleas of York |
| | : | County, Civil Division, dated |
| COMMONWEALTH OF PENNSYLVANIA, | : | December 30, 2019 at No. 2017-SU- |
| DEPARTMENT OF TRANSPORTATION, | : | 003297 |
| BUREAU OF DRIVER LICENSING, | : | |
| | : | SUBMITTED: October 14, 2022 |
| Appellee | : | |


**OPINION**


**JUSTICE DONOHUE**                                          **DECIDED: April 19, 2023**

In this appeal, we are tasked with interpreting Section 3806 of Pennsylvania's

Vehicle Code, 75 Pa.C.S. § 3806.[1]  Specifically, the Court is asked to consider whether

---

[1]  This statute states as follows:

> **(a) General rule.--**Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean any conviction for which judgment of sentence has been imposed, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for any of the following:
>
> (1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance);
>
> (2) an offense under former section 3731;

the Commonwealth Court erred in concluding that, in drafting this statute, the General Assembly intended to mandate that, when a defendant is sentenced for two driving-under-the-influence ("DUI") offenses on the same day, both offenses must be considered prior offenses to each other with each warranting civil recidivist collateral consequences, despite the facts that the defendant committed the DUI violations at distinct points in time and had never previously been convicted of DUI. *See* 75 Pa.C.S. § 3806(b)(3) ("If the defendant is sentenced for two or more offenses in the same day, the offenses shall be considered prior offenses within the meaning of this subsection."). For the reasons that

---

(3) an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

**(b) Timing.--**

(1) For purposes of sections 1553(d.2) (relating to occupational limited license), 1556 (relating to ignition interlock limited license), 3803 (relating to grading), 3804 (relating to penalties) and 3805 (relating to ignition interlock), the prior offense must have occurred:

(i) within 10 years prior to the date of the offense for which the defendant is being sentenced; or

(ii) on or after the date of the offense for which the defendant is being sentenced.

(2) The court shall calculate the number of prior offenses, if any, at the time of sentencing.

(3) If the defendant is sentenced for two or more offenses in the same day, the offenses shall be considered prior offenses within the meaning of this subsection.

75 Pa.C.S. § 3806.

follow, we respectfully disagree with the Commonwealth Court and, therefore, reverse that court's order.

## I. Facts and Procedural History

The facts underlying this appeal are undisputed. On March 25, 2016, Appellant Jose L. Vellon ("Vellon") was arrested for DUI of alcohol pursuant to Subsection 3802(a)(1) of the Vehicle Code, 75 Pa.C.S. § 3802(a)(1) (general impairment) ("First DUI").[2] A violation of this statute constitutes an "ungraded misdemeanor." *See* 75 Pa.C.S. § 3803(a)(1) (providing that an individual who violates Subsection 3802(a) "and has no more than one prior offense commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under section 3804 (relating to penalties)"). On November 22, 2016, Vellon was accepted into the Accelerated Rehabilitation Disposition ("ARD") Program.[3]

---

[2] This statute provides as follows:

> **(a) General impairment.--**
>
> (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

[3] As this Court recently explained,

> ARD is a pretrial disposition of certain cases, governed primarily by Chapter 3 of the Pennsylvania Rules of Criminal Procedure, which suspends formal criminal proceedings before conviction and provides the accused with certain rehabilitative conditions, the completion of which results in the dismissal of the pending criminal charges and a clean record for the defendant.

On December 23, 2016, police charged Vellon with another DUI, alleging that he violated Subsection 3802(c) of the Vehicle Code, 75 Pa.C.S. § 3802(c) (highest rate of alcohol) ("Second DUI").[4]  As a result of the Second DUI, on June 22, 2016, the trial court entered an order removing Vellon from ARD for the First DUI.

Vellon pleaded guilty to the First and Second DUIs.  On October 19, 2017, he was sentenced on both DUI violations.  As to the First DUI, Vellon was sentenced to six months of probation, thirty days of alcohol monitoring, plus fines and costs.  In addition, the sentencing order for the First DUI notes that there was "no suspension."  Regarding the Second DUI, the court sentenced Vellon to five years of intermediate punishment with thirty days of credit for inpatient treatment, sixty days of house arrest with alcohol monitoring, plus fines and costs.  The sentencing order for this DUI violation indicates that Vellon surrendered his driver's license.  Importantly, Vellon had not been convicted of DUI prior to these two convictions.

Subsequently, Appellee Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing ("PennDOT") informed Vellon that it would be suspending his driving privileges as a collateral consequence of his DUI convictions pursuant to Section 3804 of the Vehicle Code, 75 Pa.C.S. § 3804.  Relevant to this appeal, that statute provides the following license suspension directions:

---

*J.F. v. Dep't of Human Servs.*, 245 A.3d 658, 661-62 (Pa. 2021).

[4] Subsection 3802(c) states as follows:

> **(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(c).

(i) Except as provided for in subparagraph (iii), 12 months for an ungraded misdemeanor or misdemeanor of the second degree under this chapter.

(ii) 18 months for a misdemeanor of the first degree or felony of the second or third degree under this chapter.

(iii) There shall be no suspension for an ungraded misdemeanor under section 3802(a) where the person is subject to the penalties provided in subsection (a) and the person has no prior offense.

75 Pa.C.S. § 3804(e)(2).

For the First DUI, PennDOT advised Vellon that, pursuant to Subsection 3804(e)(2)(i) of the Vehicle Code, his license would be suspended for one year, effective April 19, 2019. Concerning the Second DUI, PennDOT reported that, pursuant to Subsection 3804(e)(2)(ii) of the Vehicle Code, Vellon's driving privileges would be suspended for eighteen months, effective October 19, 2017.[5] Vellon filed a summary appeal in the court of common pleas challenging his license suspension solely for the First DUI.

The trial court held a hearing on March 1, 2018. At that hearing, Vellon argued that PennDOT erroneously suspended his license for the First DUI. Because the First DUI resulted in a conviction for an ungraded misdemeanor under Subsection 3802(a) and Vellon had no prior DUI violations, he contended that, pursuant to Subsection 3806(e)(2)(iii) of the Vehicle Code, PennDOT should not have suspended his driver's license for the First DUI. *See* 75 Pa.C.S. § 3806(e)(2)(iii) ("There shall be no suspension for an ungraded misdemeanor under section 3802(a) where the person is subject to the

---

[5] Vellon received this license suspension for the Second DUI because it was graded as a misdemeanor of the first degree, considering that the First DUI qualified as a "prior offense." *See* 75 Pa.C.S. § 3803(b)(4) ("An individual … who violates section 3802(c) or (d) and who has one prior offense commits a misdemeanor of the first degree."); *id.* § 3804(e)(2)(ii) (explaining that a person who commits an offense under Section 3802 shall have his driving privileges suspended for 18 months for, inter alia, a misdemeanor of the first degree).

penalties provided in subsection (a) and the person has no prior offense.").  PennDOT

took the position that it properly suspended Vellon's driver's license for twelve months for

the First DUI pursuant to Subsection 3804(e)(2)(i) because Vellon was sentenced to two

DUI offenses on the same day, rendering both his First and Second DUIs "prior offenses"

according to 75 Pa.C.S. § 3806(b)(3), which states that "[i]f the defendant is sentenced

for two or more offenses in the same day, the offenses shall be considered prior offenses

within the meaning of this subsection."  Apparently agreeing with PennDOT, the trial court

entered an order dismissing Vellon's appeal.

Vellon then asked the trial court to reconsider its order.  The court granted this

request and later entertained further argument on the validity of PennDOT's suspension

of Vellon's license for the First DUI.  Thereafter, the court again concluded that PennDOT

properly suspended Vellon's driving privileges.   The court opined that Subsection

3806(b)(3) of the Vehicle Code "clearly allows two or more offenses sentenced on the

same day to be considered prior offenses of each other."  Trial Court Opinion, 12/30/2019,

at 7.  The court bolstered this conclusion by suggesting that, "if the legislature had not

intended this interpretation, it would have stated that 'the offense for which defendant is

sentenced first shall be a prior offense within the meaning of this subsection' or words to

similar effect."  *Id.*  Vellon appealed to the Commonwealth Court, which affirmed the trial

court's order in a published opinion.   *Vellon v. Dep't of Transp., Bureau of Driver*

*Licensing*, 263 A.3d 679 (Pa. Commw. 2021).

In the Commonwealth Court, Vellon argued, in relevant part, as follows:

> [T]he trial court erred in concluding that the definition of "prior
> offense" set forth in Section 3806(a) of the Vehicle Code
> includes a conviction for which judgment of sentence has not
> been imposed before the sentencing on the present offense—
> *i.e.*, that Section 3806(b)(3) of the Vehicle Code somehow
> permits [Vellon's] Second DUI to be a prior offense of his First
> DUI such that [PennDOT] could suspend [Vellon's] operating

privilege for one year under Section 3804(e) of the Vehicle Code[.]

*Id.* at 681-82.

In reviewing the relevant portions of the Vehicle Code, the Commonwealth Court observed that, "to qualify for the exception to the operating privilege suspension set forth in Section 3804(e)(2)(iii), an individual must: (1) be convicted for an ungraded misdemeanor under Section 3802(a); (2) be subject to the penalties in Section 3804(a) (relating to first-time DUI offenses); and (3) have no prior offense." *Id*. at 682. The intermediate court then noted the parties' agreement that Vellon's First DUI met conditions (1) and (2). Thus, the court opined, "Whether [Vellon] meets the requirements of the exception set forth in Section 3804(e)(2)(iii) … hinges on whether he has a prior offense as that term is defined in Section 3806 of the Vehicle Code." *Id.* at 682-83. The court then attempted to construe the Vehicle Code utilizing the well-settled tenets of statutory construction. *Id.* at 684-85.

In so doing, the Commonwealth Court first addressed Vellon's contention that "the definition of 'prior offense' in Section 3806(a) of the Vehicle Code applies to Section 3806(b)(3) such that it does not permit a finding that [Vellon's] Second DUI is a prior offense of his First DUI." *Id.* at 685. Vellon further argued that "the exclusionary language in Section 3806(a)—*i.e.*, 'except as set forth in subsection (b)'—does not exempt Section 3806(b)(3) from the definition of 'prior offense' in Section 3806(a)." *Id.* The court noted that Vellon supported his position by relying on this Court's decision in *Commonwealth v. Mock*, 219 A.3d 1155 (Pa. 2019), and the Commonwealth Court's opinion in *Diveglia v. Department of Transportation*, 220 A.3d 1167 (Pa. Commw. 2019).

The Commonwealth Court explained that, in *Mock*, this Court "considered whether the timeline for the ten-year lookback provision under Section 3806(b)(1)(i) of the Vehicle Code begins running at the occurrence date or the conviction date of a prior offense." *Id.*

According to the intermediate court, "[i]n holding that the conviction date is the proper marker for running the clock on a prior offense, the Supreme Court concluded that the exclusionary language in Section 3806(a) does not modify the essential definition of prior offense as applied to Section 3806(b)." *Id.* Instead, the court stated, the *Mock* Court concluded that "Section 3806(b) simply applies time limits to the broad definition of 'prior offense' in Section 3806(a)--*i.e.*, 'any conviction' becomes 'a conviction' within the enumerated time constraints."[6] *Id.*

The Commonwealth Court agreed with Vellon that *Mock* and its own precedent "unequivocally establish that the definition of 'prior offense' as set forth in Section 3806(a) of the Vehicle Code applies to Section 3806(b) of the Vehicle Code, and that Section 3806(a)'s exclusionary language does not permit Section 3806(b)(3) to operate independently of the general definition of 'prior offense.'" *Id.* The court, however, posited that it was required to further analyze the Vehicle Code because this precedent was not dispositive as to the correct operation of Section 3806(b)(3) of the Vehicle Code." *Id.*

---

[6] The Commonwealth Court also discussed its opinion in *Diveglia*. Kathryn Diveglia ("Diveglia") was arrested for two DUI of alcohol violations nearly seven months apart. The trial court sentenced her for the second-in-time violation months before it sentenced her for her first-in-time violation. When PennDOT was notified of Diveglia's conviction for the first-in-time DUI, it "concluded that the conviction for the second DUI constituted a prior offense pursuant to Section 3806 of the Vehicle Code, and [PennDOT] suspended [her] operating privilege for twelve months pursuant to Section 3804(e)(2)(i)." *Id.* at 685-86. When the matter reached the Commonwealth Court, the court was asked to determine "whether the second DUI could be a prior offense of the first DUI simply because the licensee received the conviction for the second DUI prior to the conviction on the first DUI." *Vellon*, 263 A.3d at 686.

The Commonwealth Court in *Diveglia* held that the second-in-time DUI qualified as a prior offense to the first-in-time DUI. In so doing, the intermediate court "emphasized that the plain language of Section 3806 considers any conviction for which judgment of sentence has been imposed to be a prior offense, regardless of the date of occurrence of the violation itself." *Id.* Consequently, the court ruled that Diveglia's second-in-time DUI conviction constituted a prior offense for purposes of her first-in-time DUI conviction.

The Commonwealth Court rejected Vellon's argument that Subsection 3806(b)(3) requires that the lookback and "on or after date" rules of Subsection 3806(b)(1)(i) and (ii) apply in a circumstance where an individual is sentenced to two or more offenses on the same day, and that the language "within the meaning of this subsection" in Subsection 3806(b)(3) limits its operation only to Subsection 3806(b)(1)(i)-(ii). *Id.* In so doing, the Commonwealth Court primarily relied upon the principle of statutory interpretation that requires a court to construe a statute, if possible, to give effect to all its provisions. *Id.* at 687 (citing, inter alia, 1 Pa.C.S. § 1921(a)). Applying that axiom, the intermediate court opined that Vellon's interpretation of the Vehicle Code would render Subsection 3806(b)(3) meaningless. More specifically, the court stated that "[t]here is nothing in Section 3806(b)(1)(i)-(ii) or elsewhere in Section 3806 to suggest that, absent the language in Section 3806(b)(3), the rules in Section 3806(b)(1)(i)-(ii) would *not* apply to two or more offenses sentenced on the same day. Rather, it is plain from the text of Section 3806(b)(1)(i)-(ii) that they would." *Id.* at 686-87 (emphasis in original).

Instead, the Commonwealth Court interpreted "Section 3806(b)(3) of the Vehicle Code as contemplating the possibility that when two or more offenses are sentenced on the same day[,] none would be a prior offense of the others." *Id.* at 687. In the court's view, "Section 3806(b)(3) … remedies this issue by providing that 'the offenses shall be considered prior offenses within the meaning of this subsection.'" *Id.* The court contended that this prevents the licensee from having no prior offense when sentenced for multiple offenses on the same day and that such sentences have no order of priority. *Id.* For these reasons, the court concluded that PennDOT properly suspended Vellon's driving privileges for the First DUI and, therefore, affirmed the trial court's order.[7]

---

[7] The Commonwealth Court also rejected Vellon's contention that PennDOT exceeded its statutory authority by determining that the Second DUI constituted a prior offense for purposes of his First DUI where the sentencing court did not treat it as such. Vellon did not request allowance of appeal on this issue, and thus, it is not before us.

Vellon filed a petition for allowance of appeal, which we granted to consider the following issue, as phrased by Vellon:

> Whether the Commonwealth Court of Pennsylvania erred in affirming the Court of Common Pleas denial of the statutory appeal of suspension of operating privileges based on a finding that 75 Pa.C.S. [§] 3806(b)(3) requires that each pending multiple driving under the influence offense for which sentencing occurs on the same day be considered a "prior offense" for all other offenses, without regard to whether sentence has yet been imposed, as provided for in the general definition of "prior offense" under 75 Pa.C.S [§] 3806(a)?

*Vellon v. Dep't of Transp., Bureau of Driver Licensing*, 274 A.3d 1226 (Pa. 2022) (per curiam).

## II. Arguments of the Parties

In his brief to this Court, Vellon explains that, pursuant to Subsection 3804(e)(2)(iii) of the Vehicle Code, PennDOT should not suspend the driving privileges of a person convicted of DUI if the following three criteria are present: (1) the licensee must be convicted of violating 75 Pa.C.S. § 3802(a)(1) as an ungraded misdemeanor; (2) the licensee must be subject to the penalties contained in 75 Pa.C.S. § 3804(a); and (3) the licensee must not have a "prior offense" as that term is defined in 75 Pa.C.S. § 3806. Vellon's Brief at 12-13.

Vellon notes that the first and second criteria are not in dispute in this matter. Agreeing with the Commonwealth Court, he posits that the sole issue in this appeal is "whether a prior offense within the meaning of 75 Pa.C.S. § 3806 of the Vehicle Code existed at the time [he] was sentenced [for] the March 25, 2016, offense (first offense in time)." *Id.* at 13. In this regard, Vellon emphasizes that, contrary to PennDOT's position below, the Commonwealth Court held that, pursuant to this Court's decision in *Mock*, the general definition of "prior offense" under Subsection 3806(a) applies to that term in Subsection 3806(b). *Id.* at 16.

Despite this recognition, Vellon asserts that the Commonwealth Court subsequently interpreted Subsection 3806(b)(3) "to mean that when two or more offenses are sentenced on the same day, each would be a prior offense of the other." *Id.* at 17. Vellon maintains that this interpretation ignores that a "prior offense" requires a previous conviction "***for which judgment of sentence has been imposed before the sentencing on the present violation***." *Id.* (emphasis in original).

Next, Vellon takes issue with the Commonwealth Court's contemplation that his interpretation of "prior offense" could result in a licensee having no prior offenses when he is sentenced for multiple DUI violations on the same day. Citing to *Commonwealth v. Haag*, 981 A.2d 902 (Pa. 2009) (holding that a defendant that committed a DUI violation at 11:40 p.m. and another DUI violation an hour and one-half later could not be sentenced as a recidivist under a previous version of the Vehicle Code where he was sentenced for both violations at the same sentencing hearing), Vellon explains that the Legislature amended Section 3806 to include, inter alia, subsection (b)(3) to close loopholes in the statutory scheme. Without grappling with the Commonwealth Court's conclusion that Subsections 3806(b)(i)-(ii) close the loophole, Vellon argues that the Legislature added subsection (b)(3) "to preclude a defendant from eluding a determination of there being a prior offense for multiple DUIs, for which both a first and second DUI offense, in time, are disposed of at the same time." *Id.* at 19.

Vellon posits that absurd results flow from the Commonwealth Court's interpretation of Subsection 3806(b)(3). "The second offense DUI, for which the defendant has not been sentenced, to be counted as a first offense DUI for sentencing on the first offense DUI, was not the intent of the [L]egislature." *Id.* Vellon states that Subsection 3806(b)(3) could, but does not, state: "If the defendant is sentenced for two

or more offenses in the same day, both offenses are considered prior offenses for one another." *Id.*

Instead, Vellon contends that Subsection 3806(a) provides a clear definition of "prior offense" that allows a DUI violation to qualify as a "prior offense" only for convictions "for which judgment of sentence has been imposed before the sentencing on the present violation." *Id.* at 19-20. Here, when the trial court sentenced Vellon in open court for the First DUI, he had not been sentenced for the Second DUI. Accordingly, in Vellon's view, the Second DUI does not fit within Subsection 3806(a)'s general definition of "prior offense[,]" which must be read into subsection (b) pursuant to *Mock*, and therefore, the Second DUI cannot operate as a "prior offense" under Subsection 3806(b)(3).

Vellon concedes that PennDOT appropriately suspended his license for the Second DUI, as it correctly utilized his First DUI in categorizing him as a repeat offender for purposes of the Second DUI. Thus, he believes that he "did not elude any prior conviction based on his being sentenced for both DUI offenses on the same date[,]" fulfilling the legislative intent of Subsection 3806(b)(3). *Id.* at 21. For these reasons, Vellon asks this Court to reverse the order of the Commonwealth Court.

In response, PennDOT insists that the Commonwealth Court correctly interpreted the Vehicle Code in this matter. It highlights that the Legislature amended Section 3806 in 2016 to add Subsection 3806(b)(3). However, contrary to Vellon's position (and in contravention of *Mock*), PennDOT posits that, "[i]n accordance with the exception to 75 Pa.C.S. § 3806(a) 'set forth' in 75 Pa.C.S. § 3806(b), the '[t]iming' of both of Vellon's DUI convictions was such that each is considered a 'prior offense' of the other, because 'the defendant [was] sentenced for two or more offenses in the same day.'" *Id.* at 17 (quoting 75 Pa.C.S. § 3806(b)(3)). PennDOT insists that, in crafting this language, the Legislature clearly intended that the exception to license suspension contained in 75 Pa.C.S.

§ 3804(e)(2)(iii) is unavailable to anyone, like Vellon, who is sentenced for more than one violation of 75 Pa.C.S. § 3802 in the same day.

While PennDOT agrees with Vellon that the Legislature does not promulgate laws with the intention of creating absurd results, it points out that courts cannot interpret statutes in a manner that renders them meaningless. In PennDOT's view, "Vellon's arguments, if accepted, would effectively read 75 Pa.C.S § 3806(b)(3) completely out of the statute, which a court may not do." *Id.* at 22 (referring to, inter alia, 1 Pa.C.S. § 1922(2) (providing that, when a court attempts to ascertain the intent of the Legislature, it should presume that "the General Assembly intends the entire statute to be effective and certain")).

In closing, PennDOT "acknowledges that there may be instances where a criminal trial court will find that [a d]efendant did not have a 'prior offense' in accordance with 75 Pa.C.S. § 3806, but [PennDOT's] records show that [Vellon] did have a 'prior offense.'" *Id.* at 23. Thus, PennDOT maintains that it properly suspended Vellon's driving privileges for his First DUI. For these reasons, PennDOT urges this Court to affirm the order of the Commonwealth Court.

## III. Analysis

The answer to the sole issue in this appeal requires the Court to interpret Section 3806 of the Vehicle Code. "Issues of statutory interpretation present this Court with questions of law; accordingly, our standard of review is de novo, and our scope of review is plenary." *Pa. Pub. Util. Comm'n v. Andrew Seder/The Times Leader*, 139 A.3d 165, 172 (Pa. 2016). The task of interpreting a statute is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991.

Pursuant to that Act, "[t]he object of all statutory interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.

§ 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Id.* § 1921(b). When, however, the words of a statute are not explicit, a court may discern the General Assembly's intent by examining considerations outside of the words of the statute. *Id.* § 1921(c). In addition, when construing a statute, we must, if possible, give effect to all of its provisions. *Id.* § 1921(a).

The Statutory Construction Act also instructs that, in ascertaining the intention of the General Assembly in enacting a statute, several presumptions may be used. *Id.* § 1922. Among those presumptions is that "the General Assembly intends the entire statute to be effective and certain." *Id.* § 1922(2). We also may presume that the General Assembly does not intend absurd or unreasonable results. *Id.* § 1922(1). As this Court wisely stated over sixty years ago, to avoid such results, we "must read [statutes] in the light of reason and common sense." *Ayers v. Morgan*, 154 A.2d 788, 789 (Pa. 1959). Lastly, we may presume that the General Assembly does not intend to violate the Constitution of the United States or this Commonwealth. 1 Pa.C.S. § 1922(3).

This case is not our first interpretation of the current version of Section 3806 of the Vehicle Code. In *Mock*, we determined that it was the intent of the General Assembly that the definition of "prior offense" contained in Subsection 3806(a) is incorporated into the use of that term in Subsection 3806(b), especially where such interpretation gives effect to both subsections. *Mock*, 219 A.3d at 1164. Here, we deal again with the interplay between the two subsections; this time with the specific interpretative guidance adopted in *Mock*.

With *Mock* and the rules of statutory construction as the backdrop, we reject the Commonwealth Court's interpretation of Subsection 3806(b)(3). At its core, that court's holding ignores *Mock's* instruction that the general definition of "prior offense" contained

in Subsection 3806(a) is imbedded in the timing provisions of Subsection 3806(b). By concluding that Subsection 3806(b)(3) requires that sentences for two or more offenses entered on the same day must be treated as prior offenses as to **each other**, the Commonwealth Court eliminated the requirement that prior offenses only have relevance in light of sentencing on a **present violation**. 75 Pa.C.S. § 3806(a). Under the Commonwealth Court's holding, when two sentences are imposed on the same day, there is no present violation; instead, there are two or more prior offenses. This interpretation not only contravenes *Mock* but leads to the absurd and unreasonable result that the happenstance of the timing of the entry of the judgments of sentence can substantively control the severity of collateral consequences of violations of law.

We look first to the unreasonableness of the Commonwealth Court's holding. If the trial court had sentenced Vellon for the First DUI on a day prior to when it adjudicated the Second DUI, then, pursuant to Subsection 3806(a)'s general definition of "prior offense," Vellon would not have had a prior offense for purposes of the First DUI. He, however, would have had a prior offense for purposes of the Second DUI when he was sentenced for that violation on a later day. *See* 75 Pa.C.S. § 3806(a) (stating that "the term 'prior offense' as used in this chapter shall mean any conviction for which judgment of sentence has been imposed … **before** the sentencing on the present violation") (emphasis added). Thus, under these circumstances, Vellon would have received only one recidivist license suspension for the Second DUI.

If the trial court would have sentenced Vellon for the Second DUI on a day prior to when it sentenced him for the First DUI, then Vellon still would have received only one recidivist license suspension. This is so because he would have been convicted and sentenced on the Second DUI before he was convicted and sentenced on "the present violation," i.e., the First DUI. *See* 75 Pa.C.S. § 3806(a) (stating that "the term 'prior

offense' as used in this chapter shall mean any conviction for which judgment of sentence has been imposed … **before** the sentencing on the **present violation**") (emphasis added).

The interpretation of Subsection 3806(b)(3) adopted by the Commonwealth Court leads to the unreasonable and absurd result that, when a defendant has no previous DUI violations and is sentenced for two DUI violations on different days, he is subject to one recidivist license suspension. Yet, when a defendant has no previous DUI violations and is sentenced for two DUI violations on the same day, he is subject to two recidivist license suspensions. Thus, under the Commonwealth Court's holding, the mere happenstance of the timing of sentencing based upon a court's schedule, availability of counsel, inclement weather or a host of other idiosyncratic occurrences that result in the entry of multiple sentences on the same day also results in the imposition of increased collateral consequences that would not have occurred but for such fortuities.[8]

Moreover, Subsection 3806(b)(3) is amenable to an interpretation that is not only reasonable but required in light of *Mock* and its placement in the scheme of the entirety of Subsection 3806(b). Subsection 3806(a) defines "prior offense as any conviction for which a judgment of sentence has been imposed ... before the sentence on the present violation[.]" 75 Pa.C.S. § 3806(a). The clear import of this section is that prior offenses are relevant only in the context of sentencing on a new, present violation. *Mock* instructs

---

[8] Not only is this an absurd and unreasonable result, such arbitrariness in the law may raise substantive due process concerns. *See Dep't of Transp., Bureau of Driver Licensing v. Middaugh*, 244 A.3d 426 (Pa. 2021) (holding that a driver's license suspension that is unreasonably delayed through no fault of the licensee is susceptible to a conclusion that the suspension deprived the individual of substantive due process protections guaranteed by the Fourteenth Amendment of the United States Constitution). *See also Peck v. State, Dep't of Transp.*, 278 P.3d 439, 445 n.2 (Idaho Ct. App. 2012) ("In regards to a license suspension, substantive due process means the reason for depriving a driver of a license cannot be arbitrary.").

that this definition is incorporated into Subsection 3806(b) where it uses the term "prior offense." As a result, the timing directive in Subsection 3806(b)(3) must be read to apply to penalties imposed **after** the same day imposition of multiple sentences.[9] Thus, for purposes of a conviction subsequent to the multiple same day sentences, all of the same day sentences are "prior offenses" despite the contemporaneous entry date.

This interpretation of Subsection 3806(b)(3) is supported by a chronological reading of the timing provisions in subsection (b). Subsections 3806(b)(2) and (3) instruct:

> (2) The court shall calculate the number of prior offenses, if any, at the time of sentencing.
>
> (3) If the defendant is sentenced for two or more offenses in the same day, the offenses shall be considered prior offenses within the meaning of this subsection.

75 Pa.C.S. § 3806(b)(2) and (3).

Read together, these subsections require the sentencing court to calculate the number of prior offenses at the time of sentencing (on the present violation) and that, in making this calculation, sentences entered on the same day for two or more offenses to which Section 3806 applies shall be considered prior offenses for the purpose of the applicable penalties on the present violation. This interpretation evidences the Legislature's intention to preclude a volume discount on multiple same day sentences by making clear that the two or more offenses shall be prior offenses when making the

---

[9] Pursuant to *Mock*'s subsection (a) incorporation requirement, Subsection 3806(b)(3) reads: If the defendant is sentenced to two or more offenses in the same day, the offenses shall be considered "convictions for which judgment of sentence have been imposed before the sentencing on the present violation" within the meaning of this subsection.

calculation under Subsection 3806(b)(2). Thus, Subsection 3806(b)(3) makes clear that when two or more judgments of sentence are entered on the same day, that timing does not impact the calculation of each of the sentences as a prior offense at the time of sentencing on the present violation.

The object of our interpretation of Subsection 3806(b)(3) is to ascertain and effectuate the intention of the General Assembly. Our conclusion that Subsection 3806(b)(3) applies to the calculation of prior offenses after the same day imposition of multiple sentences gives effect to all of the relevant provisions of Section 3806, avoids absurd and unreasonable results and comports with the presumption that the General Assembly does not intend to violate the state or federal Constitutions. Moreover, it employs the interpretation of Section 3806 recently articulated in *Mock*.

Our interpretation of Subsection 3806(b)(3) makes clear that it has no application to the circumstances present in this case. Because the Commonwealth Court held to the contrary, we reverse that court's order.

Chief Justice Todd and Justice Wecht join the opinion.

Justice Mundy files a concurring opinion in which Justice Dougherty joins.

Justice Brobson did not participate in the consideration or decision of this matter.